**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Leonard L. CAPPETTO, Individually and doing business as Western Avenue Billiards, et al., Defendants-Appellants.**

**No. 74–1350.**

United States Court of Appeals,
Seventh Circuit.

Argued June 13, 1974.

Decided Sept. 4, 1974.

Rehearing Denied Oct. 1, 1974.

**1354**

Melvyn L. Segal, Melvin B. Lewis, Chicago, Ill., for defendants-appellants.

James R. Thompson, U. S. Atty., Gary L. Starkman, John B. Simon, Robert B. Schaefer, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before STEVENS, SPRECHER and TONE, Circuit Judges.

TONE, Circuit Judge.

The constitutionality of the civil remedies provision of the Organized Crime Control Act of 1970 (18 U.S.C. § 1964) is challenged in this appeal from an order granting a preliminary injunction against further gambling activities, a related default order, and a contempt order.

The provisions of the Act pertinent here provide as follows: Section 1955 of Title 18 makes it an offense to participate in an illegal gambling business, which is defined as a gambling business violative of state law involving five or more participants that remains in sub-stantially continuous operation for over 30 days or has a gross revenue of $2,000 in any one day. Section 1961 defines "racketeering activity" to include, *inter alia,* any act indictable under Section 1955 and "pattern of racketeering activity" to mean at least two acts of racketeering activity, with qualifications not germane here. Section 1962, in subsection (b), makes it unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or whose activities affect, interstate or foreign commerce. Subsection (c) of that section makes it unlawful for any person employed by or associated with such an enterprise to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt. Subsection (d) makes it unlawful to conspire to violate any of the other subsections of Section 1962. Section 1963, which is not invoked by the government in this case, prescribes criminal penalties for violation of Section 1962. Finally, Section 1964, under which this action is brought, gives the District Courts of the United States "jurisdiction to prevent and restrain violations of section 1962," and lists by way of illustration several types of equitable relief that may be granted.

The Act thus gives the government both civil and criminal remedies for the enforcement of Section 1962. In this case the government elected to use its civil remedy.

The complaint alleges the following facts. On various occasions from October 26, 1973 to the date of the filing of the complaint, defendants Joseph A. Corabi, Stanley J. Mikolajczak, and Thomas J. Wilson used a building known as Western Avenue Billiards in Chicago and the telephone located there to receive horse race and sports wagers and to transmit wagering information. This activity took place with the knowledge of the owner, defendant Leonard L. Cap-

petto. Defendants Joseph I. Mantia, George J. Musteikas, and Nicholas J. Pidone, and others known to the government only by nickname, placed wagers with defendants Corabi, Mikolajczak, and Wilson for persons other than themselves. On various occasions another person known to the plaintiff only as "Joe" received wagers from, and gave wagering information to defendant Corabi. Defendant Pidone also allowed his residence to be used for the gambling operation. These activities are alleged to constitute an illegal gambling business having a gross revenue of over $2,000 on a single day and involving five or more persons in violation of Illinois law and Section 1955 which has diverted money and goods from legitimate enterprises into illegal channels.

In Count I of the complaint which is laid under Section 1962(b), it is alleged that, through a pattern of racketeering activity consisting of participating on two or more occasions in an illegal gambling business violative of Section 1955, or through collection of an unlawful debt, the defendants acquired or maintained interests in or control of an enterprise, *viz.*, an illegal gambling business proscribed by Section 1955, which was engaged in, or the activities of which affected, interstate commerce. In Count II it is alleged that the defendants violated Section 1962(c) by conducting the enterprise's affairs through a pattern of racketeering activity. In Count III it is alleged that the defendants violated Section 1962(d) by conspiring to do the acts charged in Counts I and II. Jurisdiction is alleged under Section 1964 and also under the general jurisdictional grant of 28 U.S.C. § 1345.

In addition to preliminary and permanent injunctions restraining the defendants and those acting in concert with them from engaging in the illegal gambling operation, the government seeks divestiture by defendant Cappetto of his interest in the building; disclosure of the identities of those persons acting in concert with defendants in the gambling business complained of, including those known to the government only by nickname; an order directing each of the defendants to submit to the United States Attorney for a period of ten years sworn quarterly reports stating his current address, business, sources of income and other information bearing on his compliance with the injunction the court is asked to enter; and such further relief as the court deems just.

After the entry of a preliminary restraining order without notice, the propriety of which is not before us, the District Court denied a motion to dismiss the complaint and entered various discovery orders, including an order granting defendant Corabi "use" immunity under 18 U.S.C. §§ 6002 and 6003. Defendants, relying on the Fifth Amendment, refused to comply with the discovery orders and refused even to appear for depositions and be sworn. The District Court then entered the three orders from which this appeal is taken. The first order provided that, by reason of defendants' refusal to obey the discovery orders, the material allegations of the complaint were taken as true, the defendants were adjudged in default, and default judgment was entered against them. In the second order the court preliminarily enjoined the defendants from carrying on the gambling activities described in the complaint. In the third order the court also held defendants in contempt and ordered them committed until they obeyed the discovery orders. The execution of the latter order has been stayed pending appeal.

Defendants' principal argument is that this action under Section 1964 is essentially a criminal proceeding, and therefore they are entitled to the rights guaranteed by the Constitution to defendants in criminal cases. They also argue that Section 1964 is unconstitutionally vague. In addition, they argue that Congress lacks authority under the commerce clause of the Constitution (Article I, Section 8, Clause 3) to prohibit gambling, and that Section 1964, and Section 1955 as well, are unconstitutional for that additional reason.

■ The latter argument need not detain us long. The power of Congress to prohibit activities made unlawful by state law which take place in, or affect, interstate commerce has long been settled. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917); Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). The Supreme Court has upheld the federal loanshark statute (18 U.S.C. § 891 et seq.) against a challenge similar to the one made by defendants here. Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). This court and other courts of appeals have held that Section 1955 is authorized by the commerce clause. United States v. Hunter, 478 F.2d 1019, 1020–1021 (7th Cir. 1973), cert. denied, 414 U.S. 857, 94 S.Ct. 162, 38 L.Ed.2d 107 (1973); United States v. Becker, 461 F.2d 230, 233–234 (2d Cir. 1972); United States v. Riehl,. 460 F.2d 454, 458 (3rd Cir. 1972); United States v. Ceraso, 467 F.2d 653, 657–658 (3rd Cir. 1972); United States v. Harris, 460 F.2d 1041, 1043–1049 (5th Cir. 1972), cert. denied, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972); Schneider v. United States, 459 F.2d 540, 541–542 (8th Cir. 1972), cert. denied, 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972); United States v. Sacco, 491 F.2d 995, 999–1001 (9th Cir. 1974). These cases demonstrate that Congress had power to determine. that the class of activities described in Section 1955 adversely affects interstate commerce and, based upon that finding, to prohibit those activities. It is also settled, on the authority of *Perez*, that the statute is valid "even when applied to individual members of the class whose own activities may not have any demonstrable impact on interstate commerce." United States v. Hunter, *supra*, 478 F.2d at 1021. See also Schneider v. United States, *supra*, 459 F.2d at 541; and United States v. Becker, *supra*, 461 F.2d at 233–234.

■ Congress also has power to provide for civil injunctive relief against activities which adversely affect interstate commerce, and that power extends to activities which are made criminal by state or federal law. Long ago the Supreme Court, in the case of In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895), held that the commerce clause authorizes the federal government, through injunctive relief granted by its courts, to restrain or remove obstructions to interstate commerce, stating:

". . . the jurisdiction of courts to interfere in such matters by injunction is one recognized from ancient times and by indubitable authority; . . . such jurisdiction is not ousted by the fact that the obstructions are accompanied by or consist of acts in themselves violations of the criminal law; . . . the proceeding by injunction is of a civil character, and may be enforced by proceedings in contempt; . . . such proceedings are not in execution of the criminal laws of the land . . . ." 158 U.S. at 599, 15 S.Ct. at 912.

Although the Court in the *Debs* case appears to rest its decision on broader grounds, the injunction in that case was issued (United States v. Debs, 64 F. 724, 745 (C.C.N.D.Ill.1894)) under the Sherman Act of 1890, 15 U.S.C. § 1, et seq., in which Congress made violations of the prohibitions against restraints of trade and monopolizing actionable in both criminal and civil proceedings. Referring to the equitable action authorized by that statute, the Court said in United States v. Trans-Missouri Freight Association, 166 U.S. 290, 343, 17 S.Ct. 540, 559, 41 L.Ed. 1007 (1897):

"Congress, having the control of interstate commerce, has also the duty of protecting it, and it is entirely competent for that body to give the remedy by injunction as more efficient than any other civil remedy."

■ In the exercise of its authority to regulate. commerce, Congress has also provided civil actions for injunction as alternatives to criminal actions in the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 321–334, the Federal Insec-

ticide, Fungicide and Rodenticide Act, 7 U.S.C. § 135, et seq., and the Meat Inspection Act, 21 U.S.C. §§ 674–676. Acting under other constitutional grants of authority, Congress has provided alternative civil and criminal remedies in the Internal Revenue Code, 26 U.S.C. §§ 7201, 7231, 7402; and the three emergency price control acts, the Emergency Price Control Act of 1942, 56 Stat. 26, the Defense Production Act of 1950, 50 App. U.S.C. § 2109, and the Economic Stabilization Act of 1970, 12 U.S.C.A. § 1904 note. Nothing in the Constitution prevents Congress from providing for both civil and criminal enforcement of a statute.

■ It has thus been settled since the *Debs* decision that acts which may be prohibited by Congress may be made the subject of both criminal and civil proceedings, and the prosecuting arm of the government may be authorized to elect whether to bring a civil or criminal action, or both. A civil proceeding to enjoin those acts is not rendered criminal in character by the fact that the acts also are punishable as crimes.

■ Defendants unsuccessfully attempt to distinguish what they refer to as "the federal anti-trust, pure food, and similar statutes." They argue that the civil proceedings provided for in those statutes, unlike those under Section 1964, are not designed as alternatives to criminal prosecution to serve when the requisite proofs are lacking. Neither, necessarily, is a proceeding under Section 1964, but the standard of proof is lower in a civil proceeding than it is in a criminal proceeding under any of the statutes we are considering. Defendants argue that the other statutes were designed to serve values "totally different from the purely criminal thrust of the Organized Crime Control Act." We see no basis in this distinction, if it is one, for circumscribing Congress' power to regulate activities affecting interstate commerce. Conduct adversely affecting interstate commerce which is of a kind that is traditionally proscribed under criminal stat-

utes, state or federal, does not enjoy a special immunity from regulation through civil proceedings, as the Supreme Court pointed out in the *Debs* case.

This is not a case in which the procedure "though technically a civil proceeding, is in substance and effect a criminal one," as was Boyd v. United States, 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886), on which defendants rely heavily. *Boyd* was expressly distinguished in *Debs, supra* (158 U.S. at 594, 15 S.Ct. 900), a decision which defendants do not see fit to mention in their main brief. Similarly In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) and In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), relied upon by defendants, involved juvenile proceedings which were civil in name but in which sanctions of a criminal nature were imposed. One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696–698, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) and United States v. U. S. Coin & Currency Co., 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), also relied upon by defendants, involved forfeitures. No forfeiture is provided for in Section 1964 or sought by the government in this proceeding.

■ Section 1964 provides for a civil action in which only equitable relief can be granted. The relief authorized by that section is remedial not punitive and is of a type traditionally granted by courts of equity. It is the same kind of equitable relief that federal courts have been granting for generations in civil actions under Section 4 of the Sherman Act and Section 15 of the Clayton Act, 15 U.S.C. §§ 4 and 25.

■ The argument that Section 1964 is unconstitutionally vague is also without merit. That section, like Section 4 of the Sherman Act, is merely a specific grant of jurisdiction to enforce the substantive provisions of the statute by injunction. The kinds of activity to which the injunction may be addressed are described with sufficient particularity in those substantive provisions, Section

1955 and Section 1962. Defendants do not argue that either of these sections is unconstitutionally vague. Nor do they question that the alleged gambling activities are covered by Section 1955. They do challenge the applicability of Section 1962, but we construe that section below to apply to their enterprise.

 The conditions under which an injunction will be issued pursuant to Section 1964 are determinable from the principles that govern the granting of equitable relief. See Appalachian Coals, Inc. v. United States, 288 U.S. 344, 377–378, 53 S.Ct. 471, 77 L.Ed. 825 (1933); Hecht Co. v. Bowles, 321 U.S. 321, 327–331, 64 S.Ct. 587, 88 L.Ed. 754 (1944); United States v. W. T. Grant Co., 345 U.S. 629, 632–633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Walling v. T. Buettner & Co., 133 F.2d 306, 308 (7th Cir. 1943); Bowles v. Lentin, 151 F.2d 615, 620 (7th Cir. 1945). Whether equitable relief is appropriate depends, as it does in other cases in equity, on whether a preponderance of the evidence shows a likelihood that the defendants will commit wrongful acts in the future, a likelihood which is frequently established by inferences drawn from past conduct.

 Section 1964 is a valid exercise of Congress' authority to regulate commerce. We turn now to the other arguments advanced by the defendants.

 Defendants contend that the Act does not authorize the action brought by the government here, because Congress' purpose was to protect "legitimate business" against infiltration by racketeers and not to prohibit racketeering itself. Both the statutory language and the legislative history, however, support the government's contrary interpretation of the Act. While one of Congress' targets was "the infiltration of legitimate organizations by organized crime" (Sen. Rep. 91–617, p. 80 (1969)), and subsection (a) of Section 1962 is aimed at that target, Congress also intended to prohibit any pattern of racketeering activity in or affecting commerce; and subsections (b) and (c) of Section 1962 specifically prohibit such activity. Subsection (b) forbids acquiring or maintaining an interest in an enterprise which affects commerce through a pattern of racketeering activity or through collection of an unlawful debt; and subsection (c) forbids participation in the affairs of such an enterprise through those means. That Congress intended to give the term "enterprise" a very broad meaning is recognized in a recent Second Circuit case. United States v. Parness, 503 F.2d 430 p. 439 (2nd Cir., 1974). There is nothing in the language of subsection (b) or (c) or in the definition section of the Act, Section 1961, to suggest that the enterprise must be a legitimate one. Congress' intention to include an illegal gambling business in the categories of "racketeering activity" and "enterprise" appears not only from the language of the statute but from the Senate Committee Report:

> "Despite the best efforts made to date by both the Federal and the several State governments, gambling continues to exist on a large scale to the benefit of organized crime and the detriment of the American people. A more effective effort must be mounted to eliminate illegal gambling. In that effort the Federal Government must be able not only to deny the use and facilities of interstate commerce to the day-to-day operations of illegal gamblers—as it can do under existing statutes—but also to prohibit directly substantial business enterprises of gambling . . . ." Sen. Rep. 91–617, pp. 72, 73 (1969).

 Defendants also argue that the government has not shown irreparable injury or inadequacy of the remedy at law. We need not decide the academic question of whether, in the absence of Section 1964, such a showing would be necessary. It was plainly the intention of Congress in adopting Section 1964 to provide for injunctive relief against violations of Section 1962 without any requirement of a showing of irreparable injury other than that injury to the public which Congress found to be inherent

in the conduct made unlawful by Section 1962. It is also obvious that Congress did not intend to require a showing of inadequacy of the remedy at law. If, as defendants contend, the existence of the criminal remedy at law under Section 1963 would defeat an action in equity under Section 1964, the latter section would be a nullity.

The defendants challenge the government's requests for divestiture and for a requirement that the defendants file quarterly reports for ten years. Divestiture has been a favored remedy for antitrust violations since Standard Oil Co. v. United States, 221 U.S. 1, 77–78, 31 S.Ct. 502, 55 L.Ed. 619 (1910). United States v. Grinnell Corp., 384 U.S. 563, 580, 86 S.Ct. 1698, 16 L. Ed.2d 778 (1966). Challenges to that form of relief as punitive have been unsuccessful. E. g., United States v. Crescent Amusement Co., 323 U.S. 173, 189, 65 S.Ct. 254, 89 L.Ed. 160 (1944). See also United States v. E. I. duPont de Nemours & Co., 366 U.S. 316, 326–327, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961). Requiring a corporate defendant to file reports is a form of relief "commonly granted for the purpose of determining whether a defendant has complied with an antitrust decree," United States v. Grinnell Corp., 384 U.S. 563, 579, 86 S.Ct. 1698, 1708, 16 L.Ed.2d 778 (1966), but, when the defendant is an individual, Fifth Amendment rights come into play. Cf. United States v. Bausch & Lomb Co., 321 U.S. 707, 726–728, 64 S.Ct. 805, 88 L.Ed. 1024 (1944). It is premature to consider whether divestiture or a reporting requirement in any form would be appropriate in this case, because the District Court has not yet ruled on the requests for these kinds of relief. The preliminary injunction order merely enjoins further gambling activities *pendente lite,* relief clearly civil in nature and within the power of the District Court to grant in this action.

Defendants' attack on the District Court's contempt order and default order falls with their challenge to the complaint on its merits. Since this was a civil proceeding, plaintiff was entitled to discovery as in any other civil case, and the court had the authority granted by the Federal Rules of Civil Procedure to enter appropriate discovery orders and to enforce those orders. Defendants have no more right to refuse to be sworn or to refuse to submit to questioning than any other party in a civil case. A defendant of course has the right under the Fifth Amendment to refuse to answer a specific question on the ground that the answer may tend to incriminate him. This right disappears, however, if use immunity is granted under 18 U.S.C. §§ 6002 and 6003, as it was to defendant Corabi. The immunity granted is coextensive with the privilege against self-incrimination, Kastigar v. United States, 406 U.S. 441, 461, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), and therefore may be invoked only against criminal proceedings. Accordingly, testimony given by a party in a civil case under a grant of immunity may be used against that party in that case, although it cannot be used in any criminal proceeding against him. When Corabi refused to testify despite the grant of immunity, and when the other defendants refused to obey the court's order to appear for depositions, they were in contempt and subject to sanctions under Rule 37, F.R.Civ.P. The District Court had authority to declare them in default and to grant interlocutory relief on the basis of that default and also had authority to hold them in contempt and to order them committed until they purged themselves of the contempts.

The orders appealed from are affirmed.

Affirmed.