UNITED STATES of America

v.

Paul CASTELLANO, a/k/a "Big Paul", et al., Defendants.

No. 75–CR–521.

United States District Court, E. D. New York.

Nov. 11, 1975.

David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, for U. S.; David Margolis, Atty.-in-Charge, Organized Crime Section, Robert G. Del Grosso, Sp. Atty., U. S. Dept. of Justice, Organized Crime and Racketeering Field Office, New York City, of counsel.

La Rossa, Shargel & Fischetti, New York City, for defendant Paul Castellano; James M. La Rossa, Gerald L. Shargel, New York City, of counsel.

Saxe, Bacon & Bolan, P. C., New York City, for defendants Paul F. Castellano, Angelo Scarpulla and Frank Guglielmini; Roy M. Cohn, Michael Rosen, New York City, of counsel.

Daniel P. Hollman, New York City, for defendant Joseph Castellano.

Paul A. Lemole, Staten Island, N. Y., for defendant Frank Granato.

Jacob P. Lefkowitz, New York City, for defendant Robert Herko.

Henry J. Boitel, New York City, for defendant Victor Li Pari.

John P. Doran, Jersey City, N. J., for defendant Robert De Prizio.

BARTELS, District Judge.

This fourteen-count indictment charges in count one all nine defendants, Paul Castellano, Paul F. Castellano, Angelo Scarpulla, Frank Guglielmini, Joseph Castellano, Frank Granato, Robert Herko, Victor Li Pari and Robert De Prizio, with conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d), and charges in count two defendants Paul Castellano, Paul F. Castellano, Scarpulla and Joseph Castellano with actual violation of § 1962(c). The charges in both counts are predicated upon an alleged association of the defendants with a group of individuals, including the defendants, engaged in loaning money at usurious interest rates and collecting unlawful debts, the activities of which affected interstate commerce.

All defendants have joined in a motion (1) to dismiss counts one and two of the indictment on the ground that the acts alleged therein do not constitute a violation of 18 U.S.C. § 1962, or, in the alternative, that if the statute is applicable to the facts alleged in the indictment, § 1962 is unconstitutional since it fails to give fair notice of prohibited conduct, and (2) for severance of counts three through fourteen on the ground that joinder is prejudicial.

I

Defendants contend that 18 U.S.C. § 1962(c) is specifically directed to the infiltration of racketeers into a legitimate enterprise and not an illegitimate one such as extending credit at usurious interest rates as charged in the indictment, and hence is not applicable to the facts alleged in the indictment. In support of their position defendants cite numerous portions of House and Senate Committee reports and cases which speak in terms of infiltration of a legitimate business. *See e. g.,* 1970 U.S. Code Cong. & Adm.News, p. 4033; *United States v. Amato,* 367 F.Supp. 547, 549 (S.D. N.Y.1973). In opposition the Government contends that the plain meaning of the stat-

ute includes illegitimate as well as legitimate enterprises.

Section 1962(c) of Title 18 of the United States Code was enacted as part of the Organized Crime Control Act of 1970, P.L. 91–452, 84 Stat. 922, 1970 U.S.Code Cong. & Adm.News, p. 1073, and provides that:

> "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

The basic purpose of the Organized Crime Control Act of 1970 was "to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." 1970 U.S.Code Cong. & Adm.News, p. 1073. *See also, Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 1294, 43 L.Ed.2d 616 (1975). In addition to prohibiting the conduct or participation in an enterprise's affairs as provided in § 1962(c), Congress proscribed the use of money derived from racketeering activities for. the purpose of acquiring an interest or control in an enterprise [18 U.S.C. § 1962(a) ], the acquiring of an interest or control in an enterprise through a pattern of racketeering or through the collection of an unlawful debt [18 U.S.C. § 1962(b) ], and conspiracy to commit any of the above [18 U.S.C. § 1962(d) ].

While the legislative history demonstrates that one of the targets of Congress in enacting this law was the infiltration of legitimate business by racketeers, it was, as indicated above, not its only concern. Because Congress intended to deal generally with organized crime's influence on the American economy, it gave a very broad meaning to the term "enterprise," which it defined to "includes any individual, partnership, corporation, association, or other legal

entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). *United States v. Parness*, 503 F.2d 430, 439 (2d Cir. 1974). In reality, this issue has been decided by authorities which have held that the term is not limited to domestic corporations and encompasses illegitimate as well as legitimate enterprises or business. *United States v. Parness, supra; United States v. Cappetto*, 502 F.2d 1351 (7th Cir. 1974). In the latter case the court found § 1962 to be applicable to the gaining control of an illegal gambling enterprise in the following language:

"There is nothing in the language of subsection (b) or (c) or in the definition section of the Act, Section 1961, to suggest that the enterprise must be a legitimate one." *Id.* at 1358.

Accordingly, we conclude that the enterprise need not be a legitimate one to fall within the ambit of § 1962(c).

■ Nor do we find any merit in defendants' argument that the statute, as construed above, is unconstitutionally vague, in that it does not give adequate and fair warning that illegitimate as well as legitimate enterprises are covered by it. The test of constitutionality for vagueness is not whether there are marginal cases in which its clarity may be in doubt but whether it conveys an adequate warning in a specific situation. *Williams v. United States*, 341 U.S. 97, 104, 71 S.Ct. 576, 95 L.Ed. 774 (1951); *United States v. Petrillo*, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); *United States v. Parness, supra,* at 442. It is clear to us that the statute's language is not vague in including not only legitimate business but also illegitimate business. *United States v. Cappetto, supra.*

## II

■ Defendants also move, pursuant to Rule 14 of the Federal Rules of Criminal Procedure, for severance of counts three through fourteen. The indictment charges Paul Castellano (counts 3 through 6), Paul F. Castellano (counts 7 and 8), and Scarpulla (counts 9 and 10) with income tax fraud.

In addition, Paul F. Castellano is charged in count eleven with obstruction of justice by attempting to influence a witness before the grand jury, and defendants Herko (count 12), Granato (count 13) and Li Pari (count 14) are charged with perjury before the grand jury. The disposition of this motion is within the discretion of the trial court, to be determined upon a balancing of interests to avoid multiple litigation on the one hand, and to afford the defendants a fair trial on the other hand. *Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921, *rehearing denied,* 363 U.S. 858, 80 S.Ct. 1605, 4 L.Ed.2d 1739 (1960); *United States v. Shuford*, 454 F.2d 772 (4th Cir. 1971); *Parker v. United States*, 404 F.2d 1193 (9th Cir. 1968), *cert. denied,* 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782 (1969); 8 *Moore's Federal Practice–Criminal Rules* ¶ 14.02[1] (1975).

■ In balancing these interests, we conclude that all of the income tax fraud counts (3 through 10) must be severed and tried together with each other but separate from the other counts of the indictment. In using the same test, however, we find that the the obstruction of justice and perjury counts (11 through 14) should not be severed. These counts all involve grand jury testimony concerning the illegal enterprise which forms the predicate of the first two counts of the indictment alleging violations of 18 U.S.C. § 1962 and accordingly are sufficiently related thereto. Therefore, counts 11 through 14 should be tried with counts 1 and 2.

Accordingly, defendants' motions are granted to permit severance of counts 3 through 10 from the rest of the indictment, and otherwise are denied.

SO ORDERED.

## ON MOTION TO REARGUE

This is a motion to reargue a motion to dismiss two counts of an indictment against the defendants for violation of Section 1962 of Title 18 of the United States Code. The offenses alleged are the conduct of the affairs of an enterprise, whose only business was the loaning of money at usurious inter-

est rates, through the collection of an unlawful debt and conspiracy to accomplish the same. The basis for the motion is that such activities do not constitute a violation of that section since the enterprise was solely engaged in "illegitimate" activities. It is necessary to again refer to the language of the section, reading as follows:

> "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

The issue turns on whether the word "enterprise" in the statute is limited to "legitimate enterprises" or also includes "illegitimate enterprises." On November 11, 1975, this Court denied the defendants' original motion, reasoning that Section 1962 included illegitimate as well as legitimate enterprises and, as so construed, was not unconstitutional. Prior thereto, on October 8, 1975, unknown to this Court, Judge Neuman of the District of Connecticut reached a contrary interpretation, *United States v. Moeller*, 402 F.Supp. 49 (D.Conn.1975), and subsequent thereto, on November 26, 1975, Judge Mishler of this Court also reached a contrary decision for practically the same reasons stated by Judge Neuman, *United States v. Altese*, Crim.No. 75–CR–341, E.D. N.Y., Nov. 26, 1975. It is these two conflicting opinions which have triggered the motion to reargue.

We gather that the reasons for these different interpretations of Section 1962 are predicated upon the following: (i) reference in the House and Senate Reports to infiltration of racketeering money into legitimate business; (ii) potential prosecution of illegitimate enterprises under other more specific federal criminal statutes, such as 18 U.S.C. §§ 1955 and 892, and also under state criminal statutes; (iii) disturbance of the delicate federal and state relationships by prosecution of these activities under federal statutes instead of state statutes; (iv) necessity for leniency in interpretation of penal statutes; and finally, (v) the erroneous nature of the opinion in *United States v. Cappetto*, 502 F.2d 1351 (7th Cir. 1974), resulting from the Court's reliance upon the legislative history of 18 U.S.C. § 1955 instead of 18 U.S.C. § 1962. We are not persuaded by any of these reasons.

■ To begin, with, we believe that the express words of the statute must govern unless there is a clear contrary intent manifested in the House and Senate Reports. If Congress wished to restrict the word "enterprise" to "legitimate enterprise" in the statute, it knew how to do so by simply adding the word "legitimate" in front of the word "enterprise." This is particularly true since there was so much discussion in these Reports concerning the infiltration of racketeering funds into legitimate business. But it did not do so. While it is true that these Reports indicate that the primary purpose of Section 1962 was to prevent the infiltration of racketeering funds into legitimate business, there is nothing in these Reports or the legislative history of the statute which indicates that this purpose was the sole purpose of Section 1962. The word "enterprise" is clear and it has no adjective to limit it to "legitimate" enterprise, and we believe we have no authority to engraft such an adjective as a modifier of the word "enterprise."[1] We also believe that in cases of this kind the proper principle to be followed in construing the statute is set forth in *United States v. Brown*, 333 U.S. 18, 25–26, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948), where the Court said:

> every part of the United States, such as legalized gambling in Nevada or transactions generally deemed usurious in most states but either legitimized or not criminally penalized in other states.

---

1. The word "legitimate" is a slippery term and raises the question of what is and what is not legitimate. We are confident that Congress never intended to permit the use of racketeering funds for what is generally viewed as illegitimate activities but not necessarily illegal in

"The canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose. . . . Nor does it demand that a statute be given the 'narrowest meaning'; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers."

2. Section 892 of Title 18 of the United States Code provides:

"(a) Whoever makes any extortionate extension of credit, or conspires to do so, shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.

(b) In any prosecution under this section, if it is shown that all of the following factors were present in connection with the extension of credit in question, there is prima facie evidence that the extension of credit was extortionate, but this subsection is nonexclusive and in no way limits the effect or applicability of subsection (a):

(1) The repayment of the extension of credit, or the performance of any promise given in consideration thereof, would be unenforceable, through civil judicial processes against the debtor

(A) in the jurisdiction within which the debtor, if a natural person, resided or

(B) in every jurisdiction within which the debtor, if other than a natural person, was incorporated or qualified to do business at the time the extension of credit was made.

(2) The extension of credit was made at a rate of interest in excess of an annual rate of 45 per centum calculated according to the actuarial method of allocating payments made on a debt between principal and interest, pursuant to which a payment is applied first to the accumulated interest and the balance is applied to the unpaid principal.

(3) At the time the extension of credit was made, the debtor reasonably believed that either

(A) one or more extensions of credit by the creditor had been collected or attempted to be collected by extortionate means, or the nonrepayment thereof had been punished by extortionate means; or

(B) the creditor had a reputation for the use of extortionate means to collect extensions of credit or to punish the nonrepayment thereof.

(4) Upon the making of the extension of credit, the total of the extensions of credit by the creditor to the debtor then outstanding, including any unpaid interest or similar charges, exceeded $100.

(c) In any prosecution under this section, if evidence has been introduced tending to show the existence of any of the circumstances described in subsection (b)(1) or

The language of Section 1962 prohibits the acquisition, infiltration or conduct of any enterprise by way of a pattern of racketeering or the collection of an unlawful debt. It has a double barrel effect, in that it prohibits the infiltration of racketeering funds into both legitimate and illegitimate businesses. Neither Section 892 nor Section 1955 [2] is concerned with the

(b)(2), and direct evidence of the actual belief of the debtor as to the creditor's collection practices is not available, then for the purpose of showing the understanding of the debtor and the creditor at the time the extension of credit was made, the court may in its discretion allow evidence to be introduced tending to show the reputation as to collection practices of the creditor in any community of which the debtor was a member at the time of the extension."

See 18 U.S.C. § 891 for definition of "extortionate extension of credit."

Section 1955 of Title 18 of the United States Code provides:

"(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) 'illegal gambling business' means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) 'gambling' includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(c) If five or more persons conduct, finance, manage, supervise, direct, or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for arrests, interceptions, and other searches and seizures, probable cause that the business receives gross revenue in excess of $2,000 in any single day shall be deemed to have been established.

(d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States.

source of the money used for the purpose of either gambling or loan sharking, as does Section 1962. It consequently seems irrelevant to argue that the Government could have prosecuted the defendants under Section 892 for extortionate credit transactions since that Section is not aimed at the same transaction and, moreover, requires the use or threatened use of violence or other criminal means for debt collection. Similarly, it is irrelevant to argue that 18 U.S.C. § 1955(a), which prohibits illegal gambling business and is limited to five or more persons and a continuing operation for more than thirty days, could be circumvented by interpreting Section 1962 to include infiltration into illegitimate as well as legitimate enterprises. Other differences in the comparable statutes appear in the penalty provisions as follows: Section 1962: 20 years and/or $25,000 plus forfeiture of interest gained; Section 1955: 5 years and/or $20,000; Section 892: 20 years and/or $10,000. Moreover, there are numerous instances where federal criminal statutes either by intent or accident have prohibited part or almost all of the same activity [3] and it has long been recognized that Congress has the power to prohibit activities made unlawful by state law which take place in or in any way affect interstate commerce without disturbing the delicate state and federal relationships.

Nor do we believe that the distinguished panel in *Cappetto* erred in its decision or in its reference to the language of the Senate Report pertaining to Title VIII of the Organized Crime Control Act, 18 U.S.C. § 1955. In fact, reference to that section was unnecessary to the decision. That case involved the use of racketeering funds for the maintenance of an illegal gambling business proscribed by Section 1955. There is no question that illegal gambling business was included in the category of "racketeering activity," which was prohibited by Section 1955. The Court specifically referred to Section 1962(c) as forbidding participation in the affairs of such gambling business through a pattern of racketeering activity. It then referred to the fact that the word "enterprise" had been used not only in the language of Section 1962(c) but also in that particular portion of the Senate Report referring to Section 1955 where the Senate stated that the purpose of the statute was not only to deny the use of interstate commerce to the day-to-day operations of illegal gamblers "but also to prohibit directly substantial business *enterprises* of gambling . . . ." (Emphasis added). Obviously, it was appropriate to note that the Senate had used the word "enterprises" in referring to the illegitimate business of gambling, thus permitting an interpretation that the use of the word "enterprise" in Section 1962 could refer to illegitimate as

All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred or alleged to have been incurred under the provisions of this section, insofar as applicable and not inconsistent with such provisions. Such duties as are imposed upon the collector of customs or any other person in respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of property used or intended for use in violation of this section by such officers,

agents, or other persons as may be designated for that purpose by the Attorney General.

(e) This section shall not apply to any bingo game, lottery, or similar game of chance conducted by an organization exempt from tax under paragraph (3) of subsection (c) of section 501 of the Internal Revenue Code of 1954, as amended, if no part of the gross receipts derived from such activity inures to the benefit of any private shareholder, member, or employee of such organization except as compensation for actual expenses incurred by him in the conduct of such activity."

3. For example, compare 18 U.S.C. § 111 (assaulting a federal officer) to 18 U.S.C. § 2114 (assaulting a postal officer); 18 U.S.C. §§ 1621 and 1623 (perjury) to 18 U.S.C. § 1001 (false statement); 18 U.S.C. § 371 (general conspiracy) to 21 U.S.C. § 846 (narcotics conspiracy); 18 U.S.C. § 1701 (obstruction of mail) to 18 U.S.C. § 1703 (delay of mail).

well as legitimate enterprises. Accordingly, we shall continue to follow the authority of the *Cappetto* court.

The motion to reargue is granted and upon reargument the original denial is adhered to.

SO ORDERED.