James HINES and Clara Hines, on behalf of themselves and their four minor children, Louise Hines, Alicia Hines, Renna Hines, and Prince Robinson

v.

Robert C. SEAMAN, Jr., individually and as Secretary of the Air Force and General Joseph J. Cody, Jr., individually and as Commander of the Electronics Systems Division at Hanscom Field, Bedford, Mass., and Colonel Wilbur Grumbles, individually and as Base Commander at Hanscom Field.

Civ. A. No. 69–1132.

United States District Court
D. Massachusetts.

Oct. 30, 1969.

Michael L. Altman, Richard A. Glickstein, Boston Legal Assistance Project, Boston, Mass., for plaintiff.

Herbert F. Travers, Jr., U. S. Atty., and Stanislaw R. J. Suchecki, Asst. U. S. Atty., for defendant.

OPINION

WYZANSKI, Chief Judge.

To prevent their eviction from Air Force premises at 34 Patterson Road, Hanscom Base, James Hines and his wife Clara Hines, on behalf of themselves and their four minor children, have filed this action against the Secretary of the Air Force, the Commander of the Electronic Systems Division at Hanscom Field, Bedford, Massachusetts and the Base Commander of that field.

James Hines is a staff sergeant in the United States Air Force, and is stationed at Hanscom Field. About June 1, 1968, pursuant to Hines' application, the Base Commander or his deputy informed Hines that he might occupy Air

Force Housing at 34 Patterson Road. Those premises are part of the Air Force public housing located at Hanscom Field. Both the land and the building are owned by the United States, and presumably are within territory ceded to it, and under its exclusive jurisdiction.

There is no evidence that anyone purporting to act as a landlord or a landlord's agent executed a lease of the aforesaid premises to Hines. What appears to be the case is that the Commander or his deputy gave written permission to Hines to occupy the premises, at a specified rate per month, the amount to be deducted from his pay. No period of occupancy was fixed.

When Hines received permission to occupy there was in force an Air Force Regulation applicable to occupancies of Air Force housing at Hanscom Base. It was in all material aspects identical with the currently effective AF Regulation 30–6, which was issued May 1, 1969 by General McConnell, U. S. Air Force Chief of Staff and which covers "Personnel Assignment of Family Housing".

According to its text, "This regulation provides commanders with a *criteria* (emphasis added) for determining the eligibility of personnel for occupancy of family housing and establishes procedures for family housing assignment."

Paragraph 11 of the Regulation provides that "Conditions for termination of family housing are *reflected* (emphasis added) in table 4." Table 4 lists in boxes 16 criteria which reflect various conditions of termination. Illustrative are the situations when a military member has deceased, when he is ordered overseas, and when he is reduced a grade that makes him ineligible for assignment to family housing. The eleventh criterion states that "When the person who was assigned family housing * * * is a military member/civilian employee and there exists misconduct on his part or that of his dependents involving misuse of fam-ily housing or other conduct contrary to safety, health, and morals, then the installation commander will terminate family housing at his discretion."

Hines' dependent minor stepson, Prince Robinson, lived with him at 34 Patterson Road.

In November 1968 the Commander's representative informed Hines that his stepson had recently committed several thefts. After talking with his stepson, Hines made restoration of the money stolen. The Air Force representative warned Hines that if he would not control the behavior of his son Prince he might have to leave Base housing.

September 5, 1969 the Air Police arrested the stepson Prince and others for molesting two girls at the Base. Hines and others were summoned on September 8, 1969 by representatives of the Commander. They did not give Hines any notice of specific written charges, nor offer him the opportunity to hear, or examine, evidence. They informed him that he and another man had to give up their Air Force housing and according to Hines' affidavit "made reference to earlier misconduct by our sons that justified * * * singling us out."

September 16, 1969 the assistant chief of the Housing Board Service of the Department of the Air Force, acting for the Commander, sent Hines a letter which, so far as material, provided:

"1. It is directed that you vacate your quarters at 34 Patterson Road no later than 15 October 1969.

2. The reason you are to vacate your quarters was given to you orally by the Base Commander on 8 September 1969."

Later the Commander's representative postponed from October 15 to October 31, 1969 the date on which Hines was directed to vacate.

October 28, 1969 plaintiffs filed this action. It seeks a temporary restraining order, a preliminary injunction, and a permanent injunction to prevent their being evicted from 34 Patterson Road.

It also seeks a declaratory judgment that AF Regulation 30–6 as applied to them violates the due process clause of the Fifth Amendment.

Defendants moved to dismiss the action.

At the outset the Court rules that no plaintiff other than Hines has any possible cause of action. Neither the wife nor any child has shown that any legal right of hers or his has been invaded.

Hines, however, has made allegations that give him a standing to invoke this Court's jurisdiction under 28 U.S.C. Secs. 1361 and 2201. The former section authorizes an "action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The latter is the declaratory judgment statute.

But Hines' claims have no substantive merit.

■ Hines is not, as he claims, a tenant of the Air Force. When he entered the premises he received no written or oral lease. He became subject to an Air Force Regulation governing the assignment of family housing. His relationship to the premises may be compared with that of a soldier who has been assigned as his quarters a bunk, or a tent, or a cabin. He is enjoying merely a permission to be with his family upon certain premises as licensees.

The initial question is, in the words of 28 U.S.C. Sec. 1361 whether that regulation imposed upon an officer of the United States "a duty owed to the plaintiff" which the officer failed to "perform."

The regulation does not purport to establish typical formal procedures of administrative law such as notice of charges, methods of conducting hearings, introduction of evidence, and steps for the entry of orders. On the contrary, it has the characteristics of a manual of executive or military instructions to subordinates in the Air Force. Carefully it selects the word "criteria" rather than the word "rules" "for determining the eligibility of personnel for occupancy of family housing and * * * procedures for family housing assignment." Then, emphasizing the aforesaid approach, it recites that "Conditions for termination of family housing are reflected [not, be it noted, exhaustively defined] in table 4."

A fair reading of the regulation shows that it is a guide, not a detailed all-inclusive command addressed to officers. For example, although there is no specific mention of the point, presumably a Commander faced with a vast increase in the military personnel at the base could use that fact as a basis for reassignment of housing even though the regulation does not expressly so state.

Moreover, it is almost beyond controversy that the regulation, particularly with respect to cases where moral misconduct is the basis of a decision to terminate occupancy, contemplates that the Commander will exercise executive rather than judicial "discretion." In general, when they issue orders military commanders do not hold hearings which involve notice and opportunity to be heard. Neither do other persons in public or private organizations who terminate licenses to occupy at the will of the licensor. It would be contrary to the whole spirit of the permission granted. The grantor has not stated or implied that he will be bound to wait upon any formal procedure or any delay sought by his grantee. Usually the rate of compensation, if any, paid by the grantee reflects this insecurity of his position. In no sense does he have an estate or a vested interest.

Of course, what has just been said does not imply that a public officer such as the Commander may exercise his discretion to terminate a license on the ground that the licensee enjoys or has exercised a right, privilege, or immunity under the United States Constitution. Indeed AF Regulation 30–6 in its introduction specifically "requires that all eligible personnel be accorded

equal treatment and opportunity in the assignment of Government-owned and controlled family housing, regardless of race, creed, color, or national origin."

Thus it may, for present purposes, be assumed that plaintiff would be entitled to have a Commander enjoined from evicting him on the ground that he was black, or on the ground that he exercised freedom of speech about a national policy such as the Vietnam war, or maybe even on the ground that the Commander did not like him or his appearance, unless the appearance violated a military regulation. Cf. Richards v. Thurston, 304 F.Supp. 449, D.Mass., September-October 1969.

But the principle of immunity from an eviction motivated by the Commander's disapproval of plaintiff's enjoyment or exercise of a Constitutional right has no application to this case.

█ Here the Commander has ordered plaintiff's eviction because the Commander in his discretion has determined that plaintiff's dependent living in Army housing and under plaintiff's control has committed crimes of larceny and assault and battery. Those grounds are entirely permissible under both the regulation and the Constitution.

█ Not only are the grounds permissible but the basis on which they were invoked is also permissible.

Here the Commander's deputy sent twice for plaintiff. On the first occasion the charge was that the stepson had committed larcenies. Although plaintiff has not admitted the correctness of the charge against his stepson, he has made restitution. On the second occasion the charge was that the stepson assaulted a young girl. Again plaintiff has not admitted the correctness of the charge against the stepson. However, he has visited the Air Police and learned what their oral version (not their police report) indicated.

No one would assert that on either of those two occasions plaintiff received a formal notice of the charges against his stepson or had an opportunity to hear and cross-examine adverse witnesses. On the other hand, none would deny that plaintiff had an opportunity to speak and offer his affirmative account.

The issue thus is narrowed. It is reduced to whether the Commander must give a formal notice, conduct a quasi-judicial hearing with full opportunity to hear and be heard, and enter a formal quasi-judicial order.

There are no such requirements in the regulation. There are none in ordinary public or private situations analogous to the case at bar. A policeman may require a licensee on the public common to leave if the policeman in good faith believes the licensee has molested girls. So may a landlord with a similar belief require a licensee *at will* to leave premises whether the permission originally accorded was for a short or long time. So may any hotel-keeper.

The right of a military commander cannot be less. The whole character of the military enterprise contemplates efficiency built upon executive authority, not judicial hearings except where penalties of a peculiar gravity are involved.

Nor does plaintiff stand any better by invoking the due process clause of the Fifth Amendment. What is due and what is undue process requires a differentiation based upon considerations of fairness, policy, logic, history, and even precedent, all directed to the particular problem under review.

No doubt today there is an increasing demand for what is called "participation." All kinds of persons who are subject to authority claim that before an order can be applied to one of them, or a pattern of behavior laid down for their conduct, they have a right to notice, to hearing, and even to sharing in the decision. In many areas, this tendency is winning judicial approval. But the spread of this new style of democracy has its limits. Army housing and like privileges and perquisites in

the military establishment are bounties, acts of grace, and areas of discretion. They are the final bastion of authority.

Perhaps such authority is sometimes abused. There is no indication that it was in this case. On the contrary, with scrupulous care the military authorities summoned plaintiff in the fall of 1968, gave him notice of what was charged, and instead of revoking his license merely warned him. A year later, when his stepson was arrested by the police, the Commander's deputies first confronted him orally and later sent him a formal notice referring to the oral confrontation.

Due process requires no more. When the military in terminating a housing license meet the standard which the courts would impose upon a civilian owner of property in terminating a like housing license, the Constitution is satisfied.

Motion to dismiss granted.