UNITED STATES of America,

v.

**Thomas Edward SISK, Charles Benson, Jr., Charles Frederick "Fred" Taylor, William Aubrey Thompson.**

No. 79–30054–NA–CR.

United States District Court, M. D. Tennessee, Nashville Division.

Sept. 28, 1979.

Joe B. Brown, William M. Cohen, W. Hickman Ewing, Jr., Nashville, Tenn., for plaintiff.

Cecil D. Branstetter, Robert H. Schwartz, Nashville, Tenn., John F. Dugger, Morristown, Tenn., Robert J. Shockey, Chattanooga, Tenn., for defendants.

---

## ORDER AND OPINION CONCERNING "ENTERPRISE" COVERAGE OF RICO STATUTE

MERRITT, Circuit Judge.*

■ The enterprise racketeering statute, popularly known as "RICO," 18 U.S.C. § 1962 (1976), imposes criminal liability on one who finances or conducts the affairs of an "ostensibly legitimate enterprise," see *United States v. Sutton*, 605 F.2d 260 (6th Cir. 1979), by committing the crimes of murder, kidnapping, robbery, extortion, bribery, gambling, sale of narcotics and other named "racketeering offenses." The question here is whether the Governor's office of the State of Tennessee is an "enterprise" within the meaning of the statute, for it is alleged in the indictment that the defendants exercised the pardon and parole powers of that office through a pattern of bribery and extortion. May a political entity or governmental agency, as distinguished from a private business, labor union or nonprofit corporation, constitute a RICO "enterprise"? We hold that the statute covers both public and private enterprises for the following three reasons:

1. The definition of enterprise given in the statute—any "legal entity" or any "group of individuals associated in fact although not a legal entity"—appears to cover public as well as private institutions and groups. If we follow the simple, literal language of the statute, a governmental agency is covered.

■ 2. Other parts of the RICO statute suggest this construction also. The racketeering offenses named in the statute include many crimes, most of which are not necessarily related to governmental activity, as distinguished from private activity. But two of the crimes listed as racketeering offenses—bribery under state law and federal law and extortion under color of law (the Hobbs Act, 18 U.S.C. § 1951)—can only be committed in the context of governmental activity. At common law and under most statutes, bribery is limited to a payment given in exchange for the exercise of governmental power. Extortion under color of law is the use of governmental power to force an involuntary payment from another. By making bribery and extortion RICO offenses, Congress must be said to have understood that these offenses would be committed by governmental officials as a part of their work. Since these offenses can only be committed in the context of the work of a governmental agency, Congress must be taken to have intended that a governmental agency could be one of the types of "enterprises," the affairs of which are conducted through a pattern of racketeering offenses. The connection between the named offenses of bribery and extortion and governmental work is too close to say that government work is not one of the kinds of activity that may constitute a RICO "enterprise."

3. There is nothing in the legislative history of the statute that suggests that Congress intended to exclude governmental agencies from "enterprise" coverage. There are broad references by the Congressional sponsors that the purpose of the statute is to keep organized crime from corrupting legitimate businesses and "governmental institutions." This is inconclusive, however. That point is that the plain meaning of the definition of "enterprise" given in the statute and the inclusion of bribery and extortion as RICO offenses lead to the conclusion that a governmental agency *is* a RICO enterprise, and nothing in the legislative history indicates an intention to the contrary.

We are led to the same conclusion if we look at the overall purpose of the statute and the harm it intends to counteract. The legislative history repeatedly says that the statute is designed to stop the "infiltration" of legitimate enterprises by persons who use the enterprise for the commission of certain crimes. This harm can occur just as

---

* The Honorable Gilbert S. Merritt, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation pursuant to Rule 25, Federal Rules of Criminal Procedure after the Honorable Charles Neese, United States District Judge for the Eastern District of Tennessee, also sitting by designation, recused himself due to physical disability.

easily in a police department, a licensing bureau or other governmental agency, as in a company or union. The harm to be counteracted is equally applicable to both public and private institutions. For extended discussions of the statute reaching the same result, see *United States v. Frumento*, 563 F.2d 1083, 1089–92 (3rd Cir. 1977) (Bureau of Cigarette and Beverage Taxes, a state agency in Pennsylvania, held an "enterprise" under RICO); *United States v. Vignola*, 464 F.Supp. 1091 (E.D.Pa.1979) (Philadelphia Traffic Court held a RICO "enterprise"); *contra, United States v. Mandel*, 415 F.Supp. 997 (Md.1976) (governor's office not an "enterprise").

The Court overrules the motions to dismiss the indictment which the defendants have filed claiming that the "enterprise" coverage of the statute is limited to private institutions. The Court appreciates the diligence of the parties in briefing this question and the clarity of their presentations.