UNITED STATES of America, Appellee,

v.

Bill R. CLARK, Appellant.

No. 80–1978.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1981.

Decided April 17, 1981.

Berl S. Smith, and William B. Howard, Jonesboro, Ark., for appellant.

George W. Proctor, U. S. Atty., Kenneth F. Stoll, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before ROSS, HENLEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Bill R. Clark appeals from a final judgment entered in the District Court[1] for the Eastern District of Arkansas upon a jury verdict finding him guilty of one count of violating Title IX of the Organized Crime Control Act of 1970, popularly known as the "Racketeer Influenced and Corrupt Organizations" Act or RICO, 18 U.S.C. § 1962(c), and seven counts of violating the Travel Act, 18 U.S.C. §§ 2, 1952. The district court sentenced appellant to three years imprisonment and a $25,000 fine on count I (the RICO violation) and to three years imprisonment, to be served concurrently with the sentence imposed on count I, on counts II–VIII (the Travel Act violations).

For reversal appellant argues that the district court erred in (1) refusing to dismiss the RICO count for failure to charge an offense and (2) refusing to grant a judgment of acquittal on the Travel Act counts for insufficiency of the evidence. For the reasons discussed below, we affirm the judgment of the district court.

Appellant served as the county judge of Craighead County, Arkansas, from January 1, 1967, to December 31, 1976. In Arkansas county judges are administrative or executive officials and are responsible for approving and authorizing the payment of bills and accounts on behalf of the county. The type of unlawful activity alleged by the government in the present case is unfortunately familiar to the court. *See United States v. Anderson*, 626 F.2d 1358 (8th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981). In a superseding indictment the government

---

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

charged appellant with conducting the affairs of the office of county judge of Craighead County through a pattern of racketeering activity, that is, by taking bribes from two sales representatives, Paul Baldwin of the "Lisco" Co. and Jack O'Roark of the Tomal Supply Co.[2] The sales representatives allegedly gave appellant kickbacks or rebates of 10% of the amount of supplies ordered by the county from their businesses. The government also alleged that the sales representatives occasionally prepared bogus invoices and vouchers for payment for supplies which had not been ordered, with the cooperation of appellant; the sales representatives and appellant then allegedly split the amount of the bogus invoice or voucher. Appellant testified on his own behalf and denied ever taking a bribe or kickback from either Baldwin or O'Roark.

The jury found appellant guilty on all counts. This appeal followed.

**2.** The superseding indictment provided in part:
G. That from on or about the 22nd day of April, 1975, through on or about the end of December, 1976, in the Eastern District of Arkansas, BILL R. CLARK was a person employed by and associated with *an enterprise engaged in, and the activities of which affected, interstate commerce, namely, the office of County Judge of Craighead County, Arkansas,* and the said BILL R. CLARK did knowingly and willfully conduct and participate, directly and indirectly, in the conduct of such enterprise's affairs, through a pattern of racketeering activity, as defined in Section 1961, Title 18, United States Code, while he was the County Judge of said county, and which pattern of racketeering activity is described as follows:
1. That on or about the 22nd day of April, 1975, in Craighead County, Arkansas, BILL R. CLARK, who was then an officer of the State of Arkansas and a person holding a place of profit and trust under the laws of the State of Arkansas, that is, County Judge of Craighead County, Arkansas, did cause and procure to be offered and did accept money and bribes from Paul A. Baldwin, such money and bribes being offered with intent to influence the decision of the said BILL R. CLARK on matters being brought before him in his official capacity, to-wit: the decision to purchase material from, and to approve for payment claim number 846, dated April 22, 1975, containing The "Lisco" Company voucher number 6070, which was submitted to Craighead County, Arkansas by Paul A.

## I. RICO

Appellant first argues that neither the office of county judge nor the government of Craighead County, Arkansas, is an "enterprise" as defined in RICO, 18 U.S.C. § 1961(4).[3] Appellant argues that the term "enterprise" does not include government agencies or offices, citing *United States v. Mandel,* 415 F.Supp. 997, 1020–22 (D.Md. 1976), *rev'd on other grounds,* 591 F.2d 1347 (4th Cir.), *vacated on other grounds by an equally divided court,* 602 F.2d 653 (1979) (banc), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980), and *United States v. Anderson, supra,* 626 F.2d at 1365–72.

In response the government argues that appellant has improperly raised this argument for the first time on appeal. The government further argues that a government agency, such as the office of county judge, is an "enterprise" under RICO.[4]

Baldwin, d/b/a The "Lisco" Company, all in violation of Arkansas Statute Annotated § 41–901 (1964 Repl.), as codified prior to the enactment of the "Arkansas Criminal Code" on January 1, 1976.
(Emphasis added).

**3.** 18 U.S.C. § 1961(4) provides: " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

**4.** *E. g., United States v. Altomare,* 625 F.2d 5, 7 & n.7 (4th Cir. 1980) (office of county prosecuting attorney); *United States v. Baker,* 617 F.2d 1060, 1061 (4th Cir. 1980) (office of county sheriff); *United States v. Grzywacz,* 603 F.2d 682, 686 (7th Cir. 1979) (city police department, individual city police officers), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2152, 64 L.Ed.2d 788 (1980); *United States v. Frumento,* 563 F.2d 1083, 1089–92 (3d Cir. 1977) (state bureau of cigarette and beverage taxes), *cert. denied,* 434 U.S. 1072, 98 S.Ct. 1256, 55 L.Ed.2d 775 (1978); *United States v. Brown,* 555 F.2d 407 (5th Cir. 1977) (city police department), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978); *United States v. Sisk,* 476 F.Supp. 1061, 1062–63 (M.D.Tenn.1979) (Merritt, J., sitting by designation) (office of the governor of Tennessee). *But see United States v. Mandel,* 415 F.Supp. 997, 1020–22 (D.Md.1976) (office of the governor of Maryland is not an "enterprise" because "enterprise" means only private, not public, entities), *rev'd on other grounds,* 591 F.2d 1347

■ For the purposes of this appeal, we characterize appellant's argument as an attack upon the indictment for failure to charge an offense, an objection which can be made at any time. *See United States v. Thomas,* 144 U.S.App.D.C. 44, 444 F.2d 919, 920 & n.1 (1971) (term "pendency of the proceeding" in Fed.R.Crim.P. 12(b)(2) has been interpreted to include appeals); *see also* Fed.R.Crim.P. 12(b)(2); 8 Moore's Federal Practice ¶ 12.03[1] (2d ed. 1980); 1 C. Wright, Federal Practice and Procedure § 193, at 404 (1969).

As noted by appellant, this court in *Anderson* did not decide whether the term "enterprise" includes government agencies or offices. 626 F.2d at 1365 n.10.[5] The issue in *Anderson* was whether the term "enterprise" encompassed "an illegal association that is proved only by facts which also establish the predicate acts constituting the 'pattern of racketeering activity.'" *Id.* at 1365. The court in *Anderson* held that

> the phrase "a group of individuals associated in fact although not a legal entity," as used in [the statutory] definition of the term "enterprise" in section 1961(4), [encompasses] only an association having an ascertainable structure which exists for the purpose of maintaining operations directed toward an economic goal that has an existence that can be defined apart from the commission of the predicate acts

constituting the "pattern of racketeering activity."

> ... [W]e do not rest our holding on the word "legitimate" but rather on the need for a discrete economic association existing separately from the racketeering activity.

*Id.* at 1372 (citations omitted). *But see, e. g., United States v. Aleman,* 609 F.2d 298, 303–05 (7th Cir. 1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Elliott,* 571 F.2d 880, 900 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). At issue in *Anderson* was the nature of the relationship between the statutory terms "enterprise" and "pattern of racketeering activity." That relationship is *not* an issue in the present case. The indictment in the present case charged appellant with conducting the affairs of an enterprise (the office of county judge) through a pattern of racketeering activity (bribery and kickbacks). The indictment in the present case, therefore, does not raise the question of the nature of the relationship between the "enterprise" and the "pattern of racketeering" because the office of county judge "necessarily constitute[s an enterprise] separate and distinct from the pattern of racketeering activity." 626 F.2d at 1365 n.10.[6] Here, the question is whether a government agency or office is an "enterprise" within the meaning of RICO.[7]

(4th Cir.), *vacated on other grounds by an equally divided court,* 602 F.2d 653 (1979) (banc), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). *Mandel* is the only case holding that "enterprise" includes only private entities.

5. The facts of this case suggest that both Anderson and Mooney [the defendants] might have been charged, as persons employed by Sharp County and Fulton County, respectively, with conducting the affairs of those counties through a pattern of racketeering activity. *This formulation of the charge would have avoided the question which we address today, in that the county governments necessarily constitute "enterprises" separate and distinct from the pattern of racketeering activity.* Nevertheless, we would still probably be confronted with the issue of defining the scope of the term "enterprise" because of the unsettled argument that the term cannot en-

compass government agencies or offices. The case as presented for review, however, does not present this issue and therefore we make no comment on its resolution.
*United States v. Anderson,* 626 F.2d 1358, 1365 n.10 (8th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981) (emphasis added) (citations omitted).

6. *See* note 5 *supra.*

7. An issue related to, but distinct from, the issue in the present case is whether the term "enterprise" includes *illegal* enterprises, that is, enterprises engaged in illegal activities like narcotics distribution or prostitution. All of the circuits that have considered this issue have decided that the term "enterprise" includes entities engaged in illegal activity. *See United States v. Sutton,* 642 F.2d 1001 at 1015–1016 (6th Cir. 1980) (banc), *rev'g* 605 F.2d 260 (6th Cir. 1979); *United States v. Whitehead,* 618

We are persuaded that the term "enterprise" as used in RICO includes governmental agencies or offices. Webster's Third New International Dictionary 757 (P. Grove ed. 1966), defines "enterprise" as (1) a plan or design for a venture or undertaking, (2) venture, undertaking, project, especially an undertaking that is difficult, complicated, or has a strong element of risk, (3) a unit of economic organization or activity, especially a business organization, and (4) any systematic purposeful activity or type of activity. Under the broadest dictionary definition, "enterprise" could refer to any undertaking or "systematic purposeful activity." [8] Congress defined "enterprise" to *include* "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Under the language of the statutory definition, "enterprise" encompasses any "legal entity." The statutory language does not differentiate between government or public "legal entities" and private "legal entities." A government agency or office is a "legal entity." *See United States v. Frumento,* 405 F.Supp. 23, 29–30 (E.D.Pa.1975), *aff'd,* 563 F.2d 1083, 1089–92 (3d Cir. 1977) (bureau of cigarette and beverage taxes is a government agency and "legal entity"), *cert. denied,* 434 U.S. 1072, 98 S.Ct. 1256, 55 L.Ed.2d 775 (1978); *United States v. Barber,* 476 F.Supp. 182, 184 (S.D.W.Va.1979) (state alcohol beverage control commissioner); *United States v. Vignola,* 464 F.Supp. 1091, 1095–97 (E.D.Pa.) (city traffic court), *aff'd mem.,* 605 F.2d 1199 (3d Cir. 1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980). *See generally* Black's Law Dictionary 804 (5th ed. 1979)

F.2d 523, 525 n.1 (4th Cir. 1980); *United States v. Aleman,* 609 F.2d 298, 305 (7th Cir. 1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Rone,* 598 F.2d 564, 568 (9th Cir. 1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Swiderski,* 193 U.S.App.D.C. 92, 593 F.2d 1246, 1248 (1978), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2055, 60 L.Ed.2d 662 (1979); *United States v. Elliott,* 571 F.2d 880, 899 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *United States v. Altese,* 542 F.2d 104, 106–07 (2d Cir. 1976) (per curiam), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977); *cf. United States v. Anderson, supra,* 626 F.2d at 1372 & n.22 ("[W]e do not rest our holding on the word 'legitimate' but rather on the need for a discrete economic association existing separately from the racketeering activity."). *Contra, e. g., United States v. Altese, supra,* 542 F.2d at 107–11 (Van Graafeiland, J., dissenting).

**8.** For references to criminal enterprise, *see, e. g., Miroyan v. United States,* 439 U.S. 1338, 1342, 99 S.Ct. 18, 21, 58 L.Ed.2d 45 (1978) (Rehnquist, J., in chambers); *United States v. Mandujano,* 425 U.S. 564, 574, 96 S.Ct. 1768, 1775, 48 L.Ed.2d 212 (1976) (Burger, C.J.); *Bynum v. United States,* 423 U.S. 952, 954, 96 S.Ct. 357, 358, 46 L.Ed.2d 277 (1975) (Brennan, J., dissenting from denial of certiorari); *Rush v. United States,* 370 F.2d 520, 523 (8th Cir.), *cert. denied,* 387 U.S. 943, 87 S.Ct. 2073, 18 L.Ed.2d 1328 (1967). For references to governmental enterprise, *see Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 416, 91 S.Ct. 1999, 2015, 29 L.Ed.2d 619 (1971) (Burger, C.J., dissenting); *Marrapese v. Rhode Island,* 500 F.Supp. 1207, 1224 (D.R.I.1980), *citing Calhoun v. City of*

*Providence,* 390 A.2d 350, 355 (R.I.1978); *Wirtz v. Local 153, Glass Bottle Blowers Ass'n,* 244 F.Supp. 745, 747 (W.D.Pa.1965), *vacated on other grounds,* 372 F.2d 86 (3d Cir. 1966), *rev'd,* 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968).

*See also Wolman v. Walter,* 433 U.S. 229, 251, 97 S.Ct. 2593, 2607, 53 L.Ed.2d 2593 (1977) (religious enterprise); *New Negro Alliance v. Sanitary Grocery Co.,* 303 U.S. 552, 555, 58 S.Ct. 703, 704, 82 L.Ed. 1012 (1938) (charitable enterprise); *Jaffee v. United States,* No. 79-1543 (3d Cir. Feb. 20, 1980) (scientific enterprise); *Braden v. University of Pittsburgh,* 552 F.2d 948, 962 (3d Cir. 1977) (banc) (educational enterprise); *Ripon Soc'y v. National Republican Party,* 173 U.S.App.D.C. 331, 525 F.2d 548, 561 n.46 (1975) (political enterprise), *citing* Linde, *Judges, Critics & the Realistic Tradition,* 82 Yale L.J. 227, 232 (1972); *United States v. West Coast News Co.,* 357 F.2d 855, 858 (6th Cir. 1966) (sexual enterprise), *rev'd sub nom. Aday v. United States,* 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967); *Simmons v. United States,* 308 F.2d 160, 164 (4th Cir. 1962) (civic enterprise); *United States ex rel. Touhy v. Ragen,* 224 U.S. 611, 617 (7th Cir. 1955) (Finnegan, J., concurring) (intellectual enterprise), *cert. denied,* 350 U.S. 983, 76 S.Ct. 470, 100 L.Ed. 851 (1956); *Keddie v. Pennsylvania State Univ.,* 412 F.Supp. 1264, 1279 (M.D.Pa.1976) (academic enterprise); *Hines v. Seaman,* 305 F.Supp. 564, 567 (D.Mass.1969) (military enterprise); *Florabelle Flowers, Inc. v. Joseph Markovits, Inc.,* 296 F.Supp. 304, 305 (S.D.N.Y.1968) (creative enterprise).

(defining legal entity as an entity with capacity to function legally, sue or be sued, and make decisions through agents). Finally, Congress could have used a term such as private or business or commercial enterprise but it did not do so.[9]

■ Thus, we conclude that the language of the statutory definition of "enterprise," in particular the term "legal entity," includes government agencies or offices. *See United States v. Brown*, 555 F.2d 407, 415 n.15 (5th Cir. 1977) (RICO is "plain on its face" and covers government agencies), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978). We hold that the office of county judge is an "enterprise" under RICO.[10]

We reject the contention that

in construing the statutory definition of "enterprise," the phrase "other legal entity" following nouns of narrow scope relating to different forms of business ventures, must be construed under the rule of *ejusdem generis* in the light of the

narrow terms which follow. . . . to limit the term "enterprise" to private business or labor organizations [, whether engaged in lawful or unlawful activities].

*United States v. Frumento, supra*, 563 F.2d at 1089 (setting forth arguments of appellants). This argument is based upon the following language from *United States v. Mandel*:

None of the specific narrow nouns involved in this definition are public entities. They are rather a listing of the common legal forms in which business entities and labor groups fashion themselves to carry out their private functions. The more general references to "any [other] legal entity" and "any group of [individuals] associated in fact although not a legal entity" must be construed to be limited to the same type and class of entities which preceded it in the statutory definition.

415 F.Supp. at 1021, *citing United States v. Moeller*, 402 F.Supp. 49, 58, 61 (D.Conn.

---

9. *Cf., e. g.*, 7 U.S.C. § 1932(c), (d) (private business enterprises); 12 U.S.C. § 1715z–1(j)(5)(A) (business enterprise); 18 U.S.C. §§ 1952 (business enterprise), 2516(1)(c) (business enterprise), 4122(a) (private enterprise); 23 U.S.C. § 306 (commercial enterprise); 47 U.S.C. § 701(c) (private enterprise); 49 U.S.C. § 303(a)(17) (commercial enterprise). *See also, e. g., Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968) (commercial enterprise); *Amell v. United States*, 384 U.S. 158, 161 n.7, 86 S.Ct. 1384, 1386 n.7, 16 L.Ed.2d 445 (1966) (private enterprise); *United States v. Dege*, 364 U.S. 51, 80 S.Ct. 1589, 4 L.Ed.2d 1563 (1960) (business enterprise); *United States v. Richard*, 636 F.2d 236 (8th Cir. 1980) (business enterprise); *National Gerimedical Hosp. & Gerontology Center v. Blue Cross*, 628 F.2d 1050 (8th Cir. 1980), *cert. granted*, —— U.S. ——, 101 S.Ct. 938, 67 L.Ed.2d 108 (1981) (business enterprise); *Aldens, Inc. v. Miller*, 610 F.2d 538 (8th Cir. 1979) (commercial enterprise), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843 (8th Cir. 1975) (business enterprise); *United States v. Schaefer*, 510 F.2d 1307 (8th Cir.) (commercial enterprise), *cert. denied*, 421 U.S. 975, 978, 95 S.Ct. 1975, 1980, 44 L.Ed.2d 466, 470 (1975); *REA v. Northern States Power Co.*, 373 F.2d 686, 695 (8th Cir.) (private enterprise), *cert. denied*, 387 U.S. 945, 87 S.Ct. 2079, 18 L.Ed.2d 1332 (1967).

10. *Accord, United States v. Altomare, supra*, 625 F.2d 5 (county prosecuting attorney); *United States v. Baker, supra*, 617 F.2d 1060 (county sheriff); *United States v. Bacheler*, 611 F.2d 443 (3d Cir. 1979) (city traffic court); *United States v. Grzywacz, supra*, 603 F.2d 682 (city police department); *United States v. Herman*, 589 F.2d 1191 (3d Cir. 1978) (state court magistrates), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979); *United States v. Frumento, supra*, 563 F.2d 1083 (state bureau of cigarette and beverage taxes); *United States v. Forsythe*, 560 F.2d 1127 (3d Cir. 1977) (county magistrates and constables); *United States v. Brown, supra*, 555 F.2d 407 (city police department); *Maryland v. Buzz Berg Wrecking Co.*, 496 F.Supp. 245 (D.Md.1980) (acting director of city department of housing and community development's inspection division); *United States v. Sisk, supra*, 476 F.Supp. 1061 (office of governor); *United States v. Barber*, 476 F.Supp. 182, 184–91 (S.D.W.Va.1979) (state alcoholic beverage control commissioner); *United States v. Vignola*, 464 F.Supp. 1091 (E.D.Pa.) (city traffic court), *aff'd mem.*, 605 F.2d 1199 (3d Cir. 1979), *cert. denied*, 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980); *United States v. Salvitti*, 451 F.Supp. 195 (E.D. Pa.) (city redevelopment authority), *aff'd mem.*, 588 F.2d 822 (3d Cir. 1978); *United States v. Cianfrani*, Cr. No. 77–412 (E.D.Pa. Dec. 16, 1977) (bench opinion) (state senate).

1975). First, we disagree with the *Mandel* court's characterization of the words "individual," "partnership," "corporation," and "association" as "specific narrow nouns" which refer only to forms of business or commercial organization. These words may have business or commercial connotations, but they are not exclusively descriptive of different *business* ventures. For example, governmental bodies may take the form of municipal corporations, *see, e. g.*, 33 U.S.C. § 497, or public associations, *see, e. g.*, 42 U.S.C. § 1856(c). Moreover, the words themselves are neutral on the question of public or private enterprise.[11] When considered generally, that is, from a not exclusively entrepreneurial perspective, these words refer to the organization or structure of activity. We see little reason to restrict the words themselves or the term "legal entity" to refer only to business or commercial activity or private entities. *See United*

States v. Altomare, 625 F.2d 5, 7 n.7 (4th Cir. 1980) (cases cited therein) (concluding that the courts have refused to adopt the narrow reading of "enterprise" that would have that word connote only "legitimate, private, commercial entities").

Because we have resolved the question whether a government agency or office can be a RICO "enterprise" on the basis of the language of the statute itself, we have no occasion to turn to other rules of statutory construction[12] or the legislative history. Our conclusion is supported, however, by other parts of the RICO statute and, in part, by the legislative history, see note 14 *infra*.

As discussed in *United States v. Sisk*, 476 F.Supp. 1061, 1062–63 (M.D.Tenn.1979) (Merritt, J., sitting by designation) (emphasis in original):

> The racketeering offenses[13] named in the statute include many crimes, most of

---

**11.** We do not read *Anderson* to limit a RICO "enterprise" to units of *economic* organization, whether public or private. The indictments in *Anderson* did not allege that the defendants operated an enterprise consisting of a discrete association with some goal that was not economic. 626 F.2d at 1362. Judge Gibson specifically noted that *Anderson* was not inconsistent with cases holding that government agencies not necessarily economic in nature could be enterprises under RICO. *Id.* at 1372 & n.22, *citing United States v. Frumento, supra*, 563 F.2d at 1089–91 (state bureau of cigarette and beverage taxes), *and United States v. Sisk, supra*, 476 F.Supp. at 1062 (office of the governor). In *Sisk* the defendant was accused of taking bribes in return for exercising the pardon and parole power of the governor's office, an enterprise quite unrelated to any economic goal apart from the bribery that constituted the pattern of racketeering activity but nonetheless an enterprise existing separate and distinct from the pattern of racketeering activity. *Anderson* is not inconsistent with *Sisk* because the indictment in *Anderson* charged an economic enterprise which, under the circumstances, was not "a discrete economic association existing separately from the racketeering activity." *Id.* at 1372. *Anderson* does not limit RICO "enterprises" to organizations or structures which exist "for the purpose of maintaining operations directed toward an economic goal." *Id.*

**12.** As discussed in *United States v. Frumento, supra*, 563 F.2d at 1090 (citations omitted), the *ejusdem generis* doctrine

is not a rule of law but merely a useful tool of construction resorted to in ascertaining legislative intent. The rule should not be employed when the intention of the legislature is otherwise evident. Nor should it be applied to defeat the obvious purpose of the statute or to narrow the targets of Congressional concern. "The rule of 'ejusdem generis' is applied as an aid in ascertaining the intention of the legislature, not to subvert it when ascertained."

**13.** 18 U.S.C. § 1961(1) defines "racketeering activity" as

(A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511

which are not necessarily related to governmental activity, as distinguished from private activity. But two of the crimes listed as racketeering offenses—bribery under state law and federal law and extortion under color of law (the Hobbs Act, 18 U.S.C. § 1951)—can only be committed in the context of governmental activity. At common law and under most statutes, bribery is limited to a payment given in exchange for the exercise of governmental power. Extortion under color of law is the use of governmental power to force an involuntary payment from another. By making bribery and extortion RICO offenses, Congress must be said to have understood that these offenses would be committed by governmental officials as a part of their work. Since these offenses can only be committed in the context of the work of a governmental agency, Congress must be taken to have intended that a governmental agency could be one of the types of "enterprises," the affairs of which are conducted through a pattern of racketeering offenses. The connection between the named offenses or bribery and extortion and governmental work is too close to say that government work is not one of the kinds of activity that may constitute a RICO "enterprise."

... There is nothing in the legislative history of the statute that suggests that Congress intended to exclude governmental agencies from "enterprise" coverage. There are broad references by the Congressional Sponsors that the purpose of the statute is to keep organized crime from corrupting legitimate businesses and "governmental institutions." [14] This is inconclusive, however. [The] point is that the plain meaning of the definition

---

(relating to the obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation or wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), sections 2314 and 2315 (relating to interstate transportation of stolen property), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), or (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States.

**14.** *See* Congressional Statement of Findings and Purpose, Pub.L.No. 91–452, 84 Stat. 923 (1970) (Congressional concern for the subversion and corruption of "our democratic processes" and the undermining of the "general welfare of the Nation and its citizens"); H.R. Rep.No. 1549, 91st Cong., 2d Sess. 39, *reprinted in* 2 [1970] U.S.Code Cong. & Ad.News 4007, 4033 (§ 1962 establishes "a threefold prohibition aimed at stopping the infiltration of racketeers into legitimate organizations"); 116

Cong.Rec. 585 (1970) (remarks of Sen. McClelland) (Title IX "[p]rohibits infiltration of legitimate organizations by racketeers ... where interstate commerce is affected"); *id.* at 601 (remarks of Sen. Hruska) ("[W]herever organized crime exists, it corrupts public officials and wields extensive political influence which insulate its activities from governmental interferences. Corrupt officials and bribed law enforcement officers operate as 'a silent conspiracy' in support of organized crime. The syndicate could not continue to operate without corrupt judges and prosecutors, or without the assistance of a handful of bribed police."); *id.* at 606 (remarks of Sen. Byrd) ("A study for the President's Crime Commission, still secret, reportedly details the infiltration of organized crime into local, State and Federal government, including, it is said, the control of several Federal district judges."); *id.* at 35199 (remarks of Rep. St. Germain) ("The danger of organized crime arises because the vast profits acquired from the sale of illicit goods and services are being invested in licit enterprises, in both the economic sphere and the political sphere. It is when criminal syndicates start to undermine basic economic and political traditions and institutions that the real trouble begins.").

*See also United States v. Barber, supra,* 476 F.Supp. at 186–87 (Congress' failure to statutorily define "organized crime" was the result of a focus upon "certain criminal activity often associated with criminal syndicates" and a desire not to "define or isolate the participants in organized crime, or otherwise restrict the applicability of the Act's provisions").

of "enterprise" given in the statute and the inclusion of bribery and extortion as RICO offenses lead to the conclusion that a governmental agency *is* a RICO enterprise, and nothing in the legislative history indicates an intention to the contrary.

We are led to the same conclusion if we look at the overall purpose of the statute and the harm it intends to counteract. The legislative history repeatedly says that the statute is designed to stop the "infiltration" of legitimate enterprises by persons who use the enterprise for the commission of certain crimes. This harm can occur just as easily in a police department, a licensing bureau or other governmental agency, as in a company or union. The harm to be counteracted is equally applicable to both public and private institutions.

*See also United States v. Frumento, supra,* 563 F.2d at 1090–92; *United States v. Barber, supra,* 476 F.Supp. at 184–90; *United States v. Vignola, supra,* 464 F.Supp. at 1095–97.

## II. *Travel Act*

Appellant next argues that the evidence was insufficient to support his convictions for violating the Travel Act because there was no evidence that appellant induced or caused Baldwin to travel in interstate commerce to carry on the unlawful activity. Appellant recognizes that Baldwin testified that the unlawful activity caused him to travel in interstate commerce,[15] but argues that under *Rewis v. United States,* 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), the mere fact that Baldwin was induced to travel in interstate commerce by the desire to participate in the bribery scheme does not mean that appellant induced or caused the interstate travel.

Appellant did not move for judgment of acquittal at the close of the government's case or at the close of all the evidence. As a result, appellant has failed to preserve this issue for appellate review. *E. g., Tanner v. United States,* 401 F.2d 281, 284–85 (8th Cir. 1968), *cert. denied,* 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806 (1969). We have, however, reviewed appellant's insufficiency of the evidence argument under the plain error rule. Fed.R.Crim.P. 52(b). We find no error.

*Rewis* does not support appellant's position. In *Rewis,* the operators of a Florida gambling business were charged with violating the Travel Act because customers of the gambling business travelled from Georgia to Florida. The Supreme Court held that "[s]ection 1952 prohibits interstate travel with the intent to 'promote, manage, establish, carry on, or facilitate' certain kinds of illegal activity; and the ordinary meaning of this language suggests that the traveler's purpose must involve more than the desire to patronize the illegal activity." 401 U.S. at 811, 91 S.Ct. at 1059. Even though the interstate travel in *Rewis* may have been caused by the gambling business, the kind of interstate travel prohibited by the Travel Act was held not to include interstate travel by a customer for the purpose of patronizing an illegal business. *Id.* at 813, 91 S.Ct. at 1060. The Court further noted, however, that "courts have correctly applied § 1952 to those individuals whose agents or employees cross state lines in furtherance of illegal activity . . . ." *Id., citing United States v. Chambers,* 382 F.2d 910, 913–14 (6th Cir. 1967) (upholding conviction of proprietor of house of prostitution based upon causation of interstate travel by taxicab drivers transporting patrons); *United States v. Barrow,* 363 F.2d 62, 64–65 (3d Cir. 1966) (upholding convic-

---

15. Q. [by the government]: Now, you testified that you paid [appellant] in his office [in Arkansas] on each of these seven occasions. . . .
   Why did you travel from Memphis [Tennessee] to Jonesboro [Arkansas] on those occasions?
   A. [by Mr. Baldwin]: To make sales to [appellant] and to render a service to the county

from which he and I both would profit moneywise.
   . . . .
   Q. What was your reason for paying these kickbacks to [appellant]?
   A. To continue in his good graces and to continue to get his business.

tion of proprietor of Pennsylvania gambling business based upon causation of interstate travel of employees who lived in New Jersey), *cert. denied*, 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967); *United States v. Zizzo*, 338 F.2d 577, 580 (7th Cir. 1964) (interstate travel by employees), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435 (1965). *Accord, Bass v. United States*, 324 F.2d 168, 171 (8th Cir. 1963) (interstate travel by employees).

In the present case Baldwin was not a mere customer of the bribery scheme; the evidence shows that he, with appellant, participated in establishing and carrying on the scheme. In view of the testimony by Baldwin that he was induced to travel in interstate commerce by the desire to participate in the bribery scheme, the jury had substantial evidence to support the conclusion that appellant's activities in fact caused the interstate travel. *See United States v. Peskin*, 527 F.2d 71, 75–76 (7th Cir. 1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976); *United States v. Rauhoff*, 525 F.2d 1170, 1174–75 (7th Cir. 1975); *cf. United States v. Cooper*, 596 F.2d 327, 330 (8th Cir. 1979) (mail fraud); *United States v. Frazier*, 545 F.2d 71, 74 (8th Cir. 1976) (18 U.S.C. § 2314), *cert. denied*, 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977).[16]

Accordingly, the judgment of the district court is affirmed.

---

**16.** The Travel Act does not require specific intent to cause interstate travel; the intent to carry on the unlawful activity is sufficient. *See United States v. Sellaro*, 514 F.2d 114, 120–21 (8th Cir. 1973), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1975); *United States v. Hanon*, 428 F.2d 101, 107–08 (8th Cir. 1970) (banc), *cert. denied*, 402 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122 (1971).